**DONOVAN CONSTRUCTION COMPANY OF MINNESOTA, a corporation, Plaintiff-Appellee,**

v.

**CONSTRUCTION, PRODUCTION & MAINTENANCE LABORERS UNION LOCAL 383, Defendant-Appellant.**

No. 74–3238.

United States Court of Appeals, Ninth Circuit.

March 29, 1976.

---

482

Lionel Richman (argued), of Richman & Garrett, Los Angeles, Cal., for defendant-appellant.

Stephen W. Pogson (argued), Phoenix, Ariz., for plaintiff-appellee.

## OPINION

Before GOODWIN and SNEED, Circuit Judges, and JAMESON,* District Judge.

SNEED, Circuit Judge:

This case is before is on appeal from the grant of a permanent injunction against Construction, Production & Maintenance Laborers Local 383 (Laborers) restraining Laborers from engaging in any strike, work stoppage, or threat of strike or work stoppage over matters subject to resolution by procedures contained in labor agreements binding Laborers and appellee Donovan Construction Company (Donovan). Laborers challenges the issuance of this injunction on three grounds: (1) they contend that the issue was moot when presented to the District Court; (2) they urge that the court below violated the Norris-LaGuardia Act with its grant of injunctive relief; (3) they argue that the trial court exceeded its jurisdiction by granting an overly broad restraining order. For the reasons set forth below, we affirm in part and reverse in part.

The action leading to the contested injunction arose out of a work stoppage on a large construction job in Phoenix, Arizona, with respect to which Donovan was the general contractor. Donovan, a Minnesota-based construction firm, employed about fifteen employees represented by Laborers at the time of the dispute. Its relationship with Laborers was on all relevant occasions governed by a master labor agreement between a builder's association to which Donovan belonged and a group of unions which included Laborers. This agreement contained a no-strike clause specifically applicable to jurisdictional disputes and provided for submission of all jurisdictional controversies to the National Joint Board for the Settlement of Jurisdictional Disputes (Board) for arbitration.

In March 1974 an employee represented by Local 1089 of International Brotherhood of Carpenters and Joiners (Carpenters), employed by Permalab, one of Donovan's subcontractors, unloaded some cabinets from a truck at the job site. Carpenters was a signatory of the master labor agreement but Permalab was not. A Laborers steward protested to Art Turney, Donovan's superintendent, that this was Laborers' work and reported the incident to a Laborers representative. Shortly thereafter another Laborers representative met with Turney to claim the work, but Turney responded that the dispute was between Permalab, Carpenters, and Laborers, and suggested that they get together to clear it up.

On April 29 another Permalab truck brought cabinets to the job site. This time the Laborers steward claimed jurisdiction and, in conjunction with five other Laborers, proceeded to unload the truck. Within minutes Turney instructed the Laborers to stop unloading the cabinets; when the Laborers continued, he shut down the job.

Later that afternoon Donovan sent a telegram to the Board requesting a decision as to which union was entitled to the work. The next day, April 30, Donovan filed for a preliminary injunction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce the provisions of the master labor agreement prohibiting strikes or work stoppages over jurisdictional disputes. On May 16 the Board issued a decision awarding the disputed work to Laborers; three months later the District Court granted the permanent injunction which is the object of this appeal.

### I.

Appellant's contention that the case was moot when the injunction was granted is based on the assumption that a *Boys Markets* injunction[1] is only appropriate to as-

---

* Honorable William J. Jameson, United States Senior District Judge, for the District of Montana, sitting by designation.

1. For the purposes of this opinion, the term "Boys Markets injunction" shall refer to the range of remedies authorized by the Supreme Court in *Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The Court there decided that, notwithstanding the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C.

sure industrial tranquility pending arbitration of the existing dispute. Once the arbitrator has made his decision and the parties have acceded thereto, it is argued, the basis for this type of relief vanishes.

■ We do not agree. A party does not necessarily moot an action stemming from his own alleged misconduct merely by ceasing the challenged behavior. If there is a reasonable apprehension that the misconduct will recur, a hearing to determine the appropriateness of future injunctive relief is proper. *See SEC v. Medical Committee for Human Rights,* 404 U.S. 403, 406, 92 S.Ct. 577, 579, 30 L.Ed.2d 560, 563–64 (1972); *United States v. W. T. Grant Company,* 345 U.S. 629, 633, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303, 1309–10 (1953). This proposition remains valid when dealing with requests for *Boys Markets* injunctions. It is true that one requirement for the issuance of a *Boys Market* injunction is a careful inquiry into whether it is sanctioned under ordinary principles of equity. *Boys Markets, Inc. v. Retail Clerks Local 770,* 398 U.S. at 254, 90 S.Ct. at 1594, 26 L.Ed.2d at 212; *Amalgamated Transit Union v. Greyhound Lines,* 529 F.2d 1073 (9th Cir. 1976). The difficulties of such an inquiry are naturally compounded when the court is faced with anticipated troubles rather than a present controversy. However, the complexity of this task will not deny a party access to this remedy if he can adduce convincing evidence that the anticipated labor dispute is sufficiently likely to occur, and that the harm threatened thereby is of such magnitude as to bring his situation within the *Boys Markets* guidelines. *See CF&I Steel Corporation v. UMW,* 507 F.2d 170, 176 (10th Cir. 1974); *Old Ben Coal Corp. v. Local 1487, UMW,* 500 F.2d 950, 953 (7th Cir. 1974). We believe such a showing has been made. Therefore, the case is not moot.

§ 101 et seq., injunctive relief may be available under section 301 of the Labor Management Relations Act (29 U.S.C. § 185(c)) if (1) the parties are contractually bound to arbitrate the dispute at issue, (2) the dispute is arbitrable,

## II.

■ Appellant next contends that the injunction violates the anti-injunction provisions of the Norris-LaGuardia Act because the nature of the dispute does not bring it within that narrow category of cases suitable for *Boys Markets*-type relief. The crux of this argument is that a *Boys Markets* injunction will issue only if the disputants are contractually bound to submit their altercations to binding arbitration in lieu of resorting to strikes, lockouts and work stoppages. *Boys Markets, supra* at 254, 90 S.Ct. at 1594, 26 L.Ed.2d at 212. Laborers assert that their dispute is with Permalab, not Donovan, because Permalab hired the Carpenters to do the disputed work. Arguing that the no-strike provisions in their contract with Donovan do not flow to the benefit of the several subcontractors, they conclude that their relationship with Permalab lacks the mutual obligation to arbitrate which is crucial to the invocation of a *Boys Markets* injunction.

This argument misses the mark. The real party to the dispute with Laborers could not be Permalab for the elementary reason that Permalab employed no Laborers on the Donovan job. A strike by the Laborers-represented employees could only be intended to force Donovan to pressure its subcontractor into succumbing to Laborers' jurisdictional demands. It is frivolous to claim that a strike so directed at Donovan does not involve Donovan in the underlying dispute.

Moreover, this jurisdictional disagreement is precisely the type of dispute the grievance machinery created by the master labor agreement was designed to handle. The agreement specifically provides that a signatory union shall submit grievances arising from jurisdictional disputes to a carefully detailed problem solving process culminating in arbitration. The signatories' dependence on this procedure to resolve jur-

(3) the moving party is ready and willing to arbitrate, and (4) the requested relief is warranted under the ordinary principles of equity. *Boys Markets, supra* at 254, 90 S.Ct. at 1594, 26 L.Ed.2d at 212.

isdictional controversies is underscored by the agreement's unqualified provision that neither the unions nor the contractors shall resort to strikes, lockouts or interruptions of the disputed or other work on the job over jurisdictional disputes. We conclude that Laborers knowingly accepted an obligation to arbitrate jurisdictional disputes when they bargained for their master labor agreements, and that Donovan is entitled to the enforcement thereof.

## III.

Appellant's final argument, that the issued injunction exceeds the authority vested in the District Court by *Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), is well-founded. The contested injunction enjoins appellant from "engaging in any strike or work stoppage or a threat of a work stoppage at the operations of plaintiff at the United States Veterans Hospital . . . concerning matters which are subject to being resolved by procedures contained in labor agreements by which plaintiffs and defendants are bound." Appellant urges, and we agree, that the scope of this judgment overreaches the narrow exception carved out of the anti-injunction provisions of the Norris-LaGuardia Act by the Supreme Court in *Boys Markets, supra*.

The events and circumstances leading to the *Boys Markets* decision are by now so familiar as to make a full recitation of them unnecessary.[2] We pause only to repeat that the accommodation reached by the Supreme Court between the anti-injunction provisions of the Norris-LaGuardia Act and section 301 of the Labor Management Relations Act is restricted to a closely circumscribed class of cases, and that injunctive relief issued thereby must be conditioned upon a detained set of factual findings. As the Supreme Court said:

"Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris-LaGuardia Act.

We deal only with the situation in which a collective bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance. The dissenting opinion in *Sinclair* [*Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962)] suggested the following principles for the guidance of the district courts in determining whether to grant injunctive relief—principles we now adopt:

'A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect. . . . Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.' 370 U.S., at 228, 82 S.Ct., at 1346. (Emphasis in original.)" 398 U.S. 235, 253 54, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199, 212.

We read this to mean that each restraint imposed by a *Boys Markets* injunction must be grounded on a finding by the District Court that the activity restrained is a proper subject for injunctive relief despite the Norris-LaGuardia Act. If the scope of the injunction is so broad as to

2. *See generally* Axelrod, *The Application of the Boys Markets Decision in the Federal Courts*, 16 B.C. Ind. & Com. L. Rev. 893 (1975).

enjoin union activity in situations that the court *could not have found* to be suitable for *Boys Markets* relief, because of the paucity of factual support for the necessary findings, the injunction crosses the jurisdictional boundary of the Norris-LaGuardia Act. We believe the injunction here crossed that boundary.

■ The record before us provides no evidence other than a single work stoppage that future strikes were likely, that they would cause irreparable harm, that there was no adequate remedy at law, or that the employer would suffer more from the denial of the injunction than would the union from its issuance. The extract from the reporter's transcript set forth in the margin [3] underscores the inadequacy of the record to support an injunction directed against "any strike or work stoppage or a threat of work stoppage" at the job site. To obtain a *Boys Markets* injunction it must be shown that the circumstances surrounding an identified grievance fulfill the requirements stated in that case as necessary for a situation to come within exception to the Norris-LaGuardia Act.

In view of the inability of the record before us to support the full sweep of the contested injunction, we direct that this matter be remanded to the district court for modification of its permanent injunction. Such modification may embrace "any strike or work stoppage, or a threat of a work stoppage" incident to a jurisdictional dispute substantially similar to that which was resolved by the May 16 arbitration award. On the present record, however, the injunction's reach cannot be extended beyond that.

Affirmed in part, Reversed and Remanded in part; each party to bear his own costs.

**3.** Mr. Richman [Attorney for the defendant]: Further, Your Honor, the defendant stipulates to the extent that some general equitable showing is necessary by the plaintiff to support a request for injunctive relief; (sic) that an equitable showing of prior practice or prior activities, whatever it may be, has been made and that the only issue which the defendant reserves is the question of the jurisdiction of the Court (a) as to whether or not it can grant the injunction; and (b) whether or not the Court at this point should grant the injunction.

The Court: Let me ask you one thing. When you say equitable showing, are you referring to prior similar work stoppages?

Mr. Richman: Well, similar disputes between the laborers.

The Court: But which resulted in a work stoppage?

Mr. Pogson [Attorney for the plaintiff]: I think we're agreeing to whatever it may take by way of irreparable injury, no adequate remedy of law,—

The Court: Oh, I see.

Mr. Pogson: —that sort of thing.

The Court: I see.

Mr. Richman: Thank you. The magical words, Your Honor.

The Court: Anything else?

Mr. Pogson: No, sir, that's all we have.