The DRUMMOND COMPANY, a corporation, et al., Plaintiffs-Appellees,

v.

DISTRICT 20, UNITED MINE WORKERS OF AMERICA et al., Defendants-Appellants.

No. 77–3182.

United States Court of Appeals, Fifth Circuit.

July 5, 1979.

William E. Mitch, Birmingham, Ala., for defendants-appellants.

Charles A. Powell, III, Harry L. Hopkins, Birmingham, Ala., for plaintiffs-appellees.

Before GODBOLD, MORGAN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

District and local unions of the United Mine Workers of America appeal contempt adjudications and fines imposed for engaging in work stoppages in violation of *Boys Markets* labor injunction. *Boys Markets, Inc. v. Retail Clerks Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). We

are asked to decide the appealability of the contempt findings and to determine the range of activity to which the injunction could properly have been applied. We conclude that the contempt adjudications are appealable final orders but that the injunction was improperly applied to conduct remote in time from the activity to which the injunction was addressed.

On January 25, 1977, two employees at the Beltona Mine of plaintiff Drummond Company were suspended for refusing to load coal onto trucks driven by nonunion drivers. The resulting strike of Beltona employees spread to a number of other mines of Drummond and its subsidiary, Taylor Coal Company (referred to jointly herein as the Company).

The Company procured a temporary restraining order on January 27 against District 20 and a number of UMW locals (referred to collectively herein as the Union). On February 4, the Union was found in contempt of the temporary restraining order which was continued from that date as a preliminary injunction. The court established a schedule of fines to be imposed if the strike continued beyond February 7. The employees resumed work. No appeal was taken from either the January 27 or the February 4 injunctions.

Thirty-four days later, on March 13, the employees again went on strike. By this time the two employees were back to work and any grievance concerning their suspension had been settled. In an order issued on May 25, the court enforced the February 4 contempt adjudication against the strikes after March 13, imposing fines pursuant to the schedule totaling $143,878.

The final incident involved only Local 8028 whose members went out on strike on May 3. The Local was held in contempt and fined $28,756 in an order issued on June 1.

The Union sought reconsideration of the court's May 25 and June 1 decisions. Fed. R.Civ.P. 59(a)(2). Its motions were overruled in an order from which the Union now appeals.

I. *Appealability of the Contempt Orders*

■ We must determine initially whether this Court has jurisdiction to consider the Union's appeal. In the Company's motion to dismiss the appeal, carried with the case, the Company asserted this Court lacks jurisdiction because the court's action was neither a final order under 28 U.S.C.A. § 1291 nor an appealable interlocutory order under 28 U.S.C.A. § 1292(a)(1), but only a nonappealable interlocutory order issued before final adjudication of the case. We conclude that the orders from which the Union appeals are final orders for the purposes of 28 U.S.C.A. § 1291 and this Court has jurisdiction of the appeal.

The appeal is taken from an order in which the court refused reconsideration of or a new trial on two prior adjudications of contempt. It is the finality of those two contempt determinations that the Company attacks. *Cf. Peabody Coal Co. v. Locals 1734, 1508 & 1548, UMW,* 484 F.2d 78, 81 (6th Cir. 1973), *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977) (although denial of a motion for reconsideration is nonappealable discretionary order, appeal treated as being from judgment to which motion relates).

■ The general rule is that a finding of civil contempt as to a party litigant is not an appealable order but is reviewable only upon appeal from a final decree in the case. *See, e. g., Fox v. Capital Co.,* 299 U.S. 105, 107, 57 S.Ct. 57, 81 L.Ed. 67 (1936); 9 *Moore's Federal Practice* ¶ 110.13[4] (2d ed. 1975). Exceptions to the rule are plentiful. Contempt orders have been held "final decisions" for purposes of § 1291 review in several cases. For example, in *Vincent v. Local 294, International Brotherhood of Teamsters,* 424 F.2d 124 (2d Cir. 1970), the union appealed an order and adjudication of contempt based on its noncompliance with a temporary injunction under § 10(1) of the National Labor Relations Act, 29 U.S.C.A. § 160(1). No appeal had been taken from the order granting the injunction. The court observed that the issuance of the injunction itself had concluded the principal

action between the parties and, because nothing remained to be determined on the merits of the injunction proceeding, a finding of nonappealability would preclude any review of the issues involved in the contempt order. 424 F.2d at 128. In *Hoffman v. Beer Drivers & Salesmen's Local 888,* 536 F.2d 1268 (9th Cir. 1976), the court distinguished between appealable and nonappealable contempt orders based on the terms of the penalty imposed. A contempt order in which the fine was suspended on the condition that the defendants comply with the injunction was deemed a nonappealable interlocutory order while a contempt order directing a fine to be paid within 30 days without permission to otherwise purge the contempt was held an appealable final order. 536 F.2d at 1272–1273. A contempt order was also held appealable in *New York Telephone Co. v. Communications Workers,* 445 F.2d 39 (2d Cir. 1971). The court emphasized the finality of the penalty imposed, noting that execution of the fines had been immediate and whatever came out of any future hearing on a preliminary or permanent injunction, these fines would remain payable as efforts to coerce compliance with the preexisting temporary restraining order. 445 F.2d at 45. *See also Bethlehem Mines Corp. v. UMW,* 476 F.2d 860 (3d Cir. 1973) (although union did not move to vacate a temporary restraining order or appeal from a preliminary injunction, appeal of contempt order disposed of on merits without discussion of order's appealability); *Peabody Coal Co. v. Locals 1734, 1508 & 1548, UMW,* 484 F.2d at 82–85 (although the injunction itself was not appealed, the court held the preliminary injunction to be a final order, preexistence of which permits appeal of contempt order).

The contempt adjudications of May 25 and June 1 whose appealability is being contested here provide respectively:

The Court further ORDERS that each defendant local union take the following affirmative action:

. . . .

2. Pay to the Clerk within fifteen days the fines levied herein or submit to the Court for its approval a payment schedule whereby such fines will be discharged in total within sixty days of the date of this order;

[May 25, 1977]

[D]efendant Local 8028 is fined for civil contempt of an order of this Court $28,-756.00, and $2,212.00 for each shift on and after the first regularly scheduled shift on Tuesday, May 10, 1977, it continues the strike . . . .

[June 1, 1977]

There is no reason to refuse to consider the Union's contempt challenges now. Although the Company suggests that the Union await the "final order" which will evolve from this litigation, it does not suggest by what procedure such an order will result, and we are inclined to regard such further proceedings as unlikely. A review of the contempt orders runs no risk of disrupting a continuing, orderly course of proceedings below. *See New York Telephone,* 445 F.2d at 45. Even if a hearing on a permanent injunction were to be held, our decision on the merits of this appeal, limited to the applicability of the temporary restraining order and preliminary injunction to the allegedly contemptuous conduct, would have little or no bearing upon it. *See id.*

Furthermore the contempt penalties imposed in these two orders are in no way conditional or subject to modification. We reject the Company's inference that execution of the fines is determinative of appealable finality. The Company's motion to dismiss the appeal is denied.

## II. *Scope of the Injunction*

[4, 5] The Union charges that the court improperly used broad, prospective injunctive relief against separate and distinct work stoppages which were outside the scope of the injunctive order. We emphasize that the Union challenged neither the temporary restraining order nor the preliminary injunction and their validity is not before the court. *Bethlehem Mines Corp. v.*

*UMW,* 476 F.2d at 864–867. *See also United States v. Partin,* 524 F.2d 992, 999 (5th Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1493, 47 L.Ed.2d 753 (1976); 9 *Moore's Federal Practice* ¶ 110.13[4] at 168. We assume for purposes of this appeal that they are valid *Boys Markets* labor injunctions enforceable by subsequent contempt sanctions. Our inquiry is restricted to determining whether the allegedly contemptuous Union activity was activity enjoined by the court's injunctive orders. While the district court's findings of facts concerning the various disputes and work stoppages will be reviewed under the clearly erroneous standard, the interpretation of the scope of the injunctive orders is a question of law to be determined by the independent judgment of this Court.

■ The Union correctly suggests that labor injunctions are to be narrowly construed. *See* 29 U.S.C.A. § 109. The 1970 Supreme Court decision, *Boys Markets, Inc. v. Retail Clerks Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199, which made such injunctive relief available by creating a limited exception to the anti-injunctive provisions of the Norris-LaGuardia Act, 29 U.S.C.A. § 104(a), emphasized the restricted circumstances in which injunctive relief may be warranted:

A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.

398 U.S. at 254, 90 S.Ct. at 1594. *See United States Steel Corp. v. UMW,* 519 F.2d 1236, 1243–1247 (5th Cir. 1975), *cert. denied,* 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976).

The Union's first contention is that the allegedly noncomplaint work stoppages in March and May concerned different disputes than the January work stoppage for which the injunction was issued. The January dispute was found by the court to concern the suspension of two employees while later work stoppages were found to have been sparked by hauling of coal from company stockpiles by nonunion truckers.

■ The temporary restraining order/preliminary injunction is, on its face, unlimited in the scope of the controversies it addresses, restraining union entities and individuals from

engaging in a strike, or work stoppage, at the Plaintiff . . . mines . . . and from failing to comply with the mandatory grievance and arbitration procedures of the collective bargaining agreement.

The parties properly assume, however, that the injunction must be interpreted in light of the accompanying findings of the district court regarding the subject matter of the grievance underlying the work stoppage. *See United States Steel Corp. v. UMW,* 519 F.2d at 1245–1246.

■ In the January 26 temporary restraining order, the court recited the work stoppages to be "the result of a dispute or controversy between the parties concerning the suspension of two employees" and determined that the dispute between the parties was arbitrable under the terms of the collective bargaining agreement. On February 4, the Union was found in violation of the temporary restraining order for continuing work stoppages over "the same underlying dispute" which the court then defined

as the nonunion hauling of coal from company stockpiles. There is, indeed, evidence to support the company's argument that nonunion hauling was the dispute underlying the suspension strike as well. For example, grievances filed by the two employees after the restraining order was issued complained of both violation of the contract's discharge procedure and the contract provision which defines union work jurisdiction. There is no evidence in the record, however, to indicate that the district court was aware of the hauling dispute on January 27 when the restraining order was issued. The injunction could be extended only to strikes over the employee suspensions, at least until February 4. On February 4, however, the court clearly announced that the focus of its injunctive order was the hauling dispute. The application of the injunctive order to disputes other than that named in the original injunction may be, as the Union argues, an impermissible expansion of the court's *Boys Markets* jurisdiction. That argument could be properly considered only on appeal of the preliminary injunction under 28 U.S.C.A. § 1292(a)(1). The injunction was not appealed, however, and the Union must be held from February 4 to have had notice that work stoppages over the hauling controversy were within the reach of the injunction. Although the May 25 enforcement order before us on appeal grew out of a contempt adjudication and schedule of fines set forth on February 4 when the injunction was restricted to the employee suspension disputes, the actual conduct for which the May 25 fines were imposed took place well after the February amplification of the temporary restraining order.

■ By the time of the independent contempt adjudication and fine of Local 8028 on June 1, the Union had clearly been informed that the activity being proscribed was striking over nonunion coal hauling, for the court had explicitly so stated in both its February 4 and May 25 findings. If the work stoppages considered in the June 1 adjudication concerned hauling of stockpile coal by nonunion drivers, they were in contempt of the February 4 preliminary injunction. The court found the Local's work stoppage beginning on May 3 concerned the same hauling dispute, and its finding is not clearly erroneous.

The Union's second argument emphasizes the remoteness in time of the allegedly contemptuous work stoppages. While *Boys Markets* authorized injunction of work stoppages in violation of collective bargaining agreements, the Supreme Court did not address prospective application of such relief. The courts of appeals of several circuits, including our own, have considered the permissibility of prospective *Boys Markets* injunctions. *See Southern Ohio Coal Co. v. UMW*, 551 F.2d 695 (6th Cir.), *cert. denied*, 434 U.S. 876 (1977); *United States Steel Corp. v. UMW*, 534 F.2d 1063 (3d Cir. 1976); *Donovan Construction Co. v. Construction Laborers Local 383*, 533 F.2d 481 (9th Cir. 1976); *United States Steel Corp. v. UMW*, 519 F.2d 1236 (5th Cir. 1975), *cert. denied*, 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976); *CF&I Steel Corp. v. UMW*, 507 F.2d 170 (10th Cir. 1974); *Old Ben Coal Corp. v. Local 1487, UMW*, 500 F.2d 950 (7th Cir. 1974); *Old Ben Coal Corp. v. Local 1487, UMW*, 457 F.2d 162 (7th Cir. 1972).

In *United States Steel v. UMW, supra,* this Court considered an injunction which purported to enjoin any work stoppages over any grievance at all for the remainder of the collective bargaining agreement. The Court concluded that the district court lacked jurisdiction to issue such an injunction because, in addition to being overly broad and vague, *see* Fed.R.Civ.P. 65(d) and 29 U.S.C.A. § 109, it violates the requirement of *Boys Markets* for case-by-case adjudication of the propriety of injunctive relief.

While we have interpreted the subject matter scope of this injunction as restricted to a single subject of dispute, nonunion coal hauling, such specificity does not necessarily authorize its limitless reapplication to subsequent disputes. The fate of single-subject prospective injunctions in this Circuit, a matter of speculation after *United States Steel,* must be decided elsewhere.

*See, e. g., Southern Ohio Coal Co. v. UMW,* 551 F.2d at 708; *United States Steel Corp. v. UMW,* 534 F.2d at 1077. The Union did not appeal the injunction itself and we are confined to deciding whether the injunction proscribes the allegedly contemptuous conduct. *See Bethlehem Mines Corp. v. UMW,* 476 F.2d at 864–867; 9 *Moore's Federal Practice* ¶ 110.13[4] at 168.

■ We conclude that the district court applied to subsequent and distinct work stoppages an injunction designed to restrict only immediate ongoing strike activity. Realizing that we cannot consider on this appeal injunctive validity questions, we note that the district court, at the time of both the January restraining order and February preliminary injunction, was not faced with conditions in which a prospective injunction would have been a probable or appropriate response. No pattern of repeated work stoppages was submitted by the Company at that time from which the court might have concluded that future strikes were likely. *Compare United States Steel Corp. v. UMW,* 519 F.2d at 1239; *CF&I Steel Corp. v. UMW,* 507 F.2d at 172, *with Donovan Construction Co. v. Construction Laborers Local 383,* 533 F.2d at 486. Rather, at the time of the restraining order the court considered a single ongoing strike which it enjoined "pending the final determination of this action." When the order was continued as a preliminary injunction on February 4, the court was still considering an ongoing strike which, with the exception of several isolated shifts, had continued since its inception on January 25. Furthermore, the fact that the February 4 order conditioned fines on *continuation* of the strike beyond the following Monday morning, February 7, suggests that the court was addressing continuous rather than intermittent strike activity and that a return to work on February 7 would purge the unions of their contempt.

Work was resumed on February 7 and continued over a 34-day period until March 13. When the March strikes ended, 50 days elapsed before Local 8028 ceased work. While these strikes may have evidenced a renewal of the same dispute, the facts do not support their characterization as a "continuation" of the same strike. The Company did not seek relief based on a pattern of repeated work stoppages. Neither, we conclude, was such relief given here.

The March 13 and May 3 strikes were not conducted within the scope of the injunctions as they are interpreted by this Court and the contempt fines must be set aside.

REVERSED.