INTERNATIONAL ASSOCIATION OF
MACHINISTS & AEROSPACE
WORKERS, AFL–CIO

v.

EASTERN AIRLINES, INC., Appellant.

No. 88–7079.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 5, 1988.

Decided June 7, 1988.

As Amended June 21, 1988.

Philip A. Lacovara, with whom Thomas D. Goldberg, John J. Gallagher, Charles L. Warren and T. Jay Thompson, Washington, D.C., were on the brief, for appellant.

Joseph Guerrieri, Jr., with whom John A. Edmond and Richard Ruda, Washington, D.C., were on the brief, for appellee. Edgar N. James, Washington, D.C., also entered an appearance for appellee.

Before EDWARDS and WILLIAMS, Circuit Judges, and OBERDORFER *, District Judge.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In July 1987, the District Court issued a preliminary injunction ("July injunction") prohibiting Eastern Air Lines, Inc. ("Eastern") from spinning off its fleet service employees into a wholly owned subsidiary, and ordering it to maintain the status quo until it exhausted the dispute resolution procedures of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–188 (1982). In March 1988, the court issued an order ("March order") adjudging Eastern in contempt of the July injunction after the carrier announced plans to spin off its East Coast air shuttle operations ("shuttle") into a majority-owned subsidiary of Texas Air Corporation ("Texas Air"), Eastern's corporate parent.

We decline to consider any claims raised by Eastern regarding the legality of the July injunction because Eastern voluntarily dismissed an earlier appeal from that injunction and agreed to abide by its terms. As for the March order, we first find that the July injunction did not prohibit the shuttle transaction, and that the District Court thus issued a new or modified injunction when it enjoined its consummation. Consequently, we have jurisdiction under 28 U.S.C. § 1292(a)(1) (1982), which permits an immediate appeal from the issuance of a new or modified injunction. We next find that the March order must be vacated be-

cause the District Court did not make the factual findings or consider the relevant criteria necessary to support the issuance of a new or modified injunction. The March order shall remain in effect for 10 days after the issuance of this court's mandate, however, during which time the International Association of Machinists and Aerospace Workers ("IAM") may request injunctive relief covering the shuttle transaction.

## I. BACKGROUND

IAM is the certified representative of 13,000 Eastern employees, approximately 6,000 of whom are fleet service workers who perform such tasks as baggage handling and aircraft cleaning and fueling. For the past 42 years, all of Eastern's IAM employees have been covered by a single collective bargaining agreement, the most recent of which was signed on May 16, 1985. Article 30 of this agreement contains a moratorium provision which reads in pertinent part: "This entire Agreement shall continue in full force and effect through December 31, 1987, and thereafter shall be subject to change as provided for in Section 6 ... of the Railway Labor Act, as amended." Joint Appendix ("J.A.") 25.

On June 23, 1987, Eastern advised IAM of its decision to transfer all of its fleet service employees to Airport Ground Services Corporation ("AGS"), a wholly owned subsidiary of Eastern. The next day, IAM sought declaratory and injunctive relief in the District Court, claiming that the involuntary transfer of IAM-represented employees amounted to an unlawful alteration of the status quo and undermined its ability to represent its members. Following a hearing on June 24, the District Court found that the proposed fleet service transaction created a "major" dispute under the RLA,[1] and it entered an order temporarily

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Two types of disputes arise under the RLA. "Major" disputes involve efforts to form or change collective bargaining agreements. *See Elgin, Joliet & E. Ry. v. Burley*, 325 U.S. 711, 723,

65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945). The parties to such disputes must "make every reasonable effort to negotiate a settlement and to refrain from altering the status quo by resorting to self-help while the Act's remedies [are] being exhausted." *Detroit & Toledo Shore Line R.R. v. United Transp. Union*, 396 U.S. 142, 149, 90 S.Ct.

enjoining Eastern from changing the status quo and from interfering with IAM as the certified bargaining representative of its fleet service employees. *IAM v. Eastern Air Lines*, No. 87–1720 (D.D.C. June 24, 1987), *reprinted in* J.A. 31.

A hearing was held on IAM's motion for a preliminary injunction on July 2, 1987. At its conclusion, the District Court issued the July injunction, in which it ordered Eastern to maintain the status quo as of June 24, 1987, "by recognizing the validity and acting in accordance with all the terms and conditions" of the parties' collective bargaining agreement, "including its moratorium provision." *IAM v. Eastern Air Lines*, No. 87–1720 (D.D.C. July 2, 1987), *reprinted in* J.A. 159. The court further enjoined Eastern "from unilaterally changing or modifying the rates of pay, rules, and working conditions of its fleet service employees" until it "exhaust[ed] the procedures mandated by the Railway Labor Act for altering or amending collective bargaining agreements." *Id.,* J.A. 160. Eastern immediately noticed an appeal of the July injunction.[2]

Eastern's appeal from the July injunction had been briefed by both sides and was scheduled for oral argument before this court when, on February 4, 1988, Eastern moved for voluntary dismissal, claiming that its appeal was moot because it had decided to abandon the AGS transaction.

The next day, Eastern announced that it had entered into an agreement to sell the shuttle's assets to Air Shuttle Holdings ("ASH"), a business entity whose majority owner would be Texas Air, in exchange for $225 million. Eastern indicated that, under the purchase agreement between it and Texas Air, the 865 or so Eastern employees working on the shuttle—including approximately 260 represented by IAM—would not be transferred involuntarily to ASH. Instead, according to Eastern, positions at ASH would be offered to Eastern's shuttle employees in seniority order.[3] With regard to those shuttle employees wishing to remain at Eastern, Eastern and Texas Air declared their "intent" that the transaction produce "no loss of employment" and that it have a "minimum impact on the employees of [Eastern]." J.A. 230.

The announcement of the shuttle transaction prompted IAM to take two actions. First, it opposed Eastern's motion for voluntary dismissal by "strenuously disput[ing] appellants' characterization of [the] appeal as moot." J.A. 335. This court agreed. In an order issued on February 16, 1988, Eastern's appeal was dismissed solely "because the company ... abandoned its claim and ... asserted that it [would] comply with the judgment of the District Court." *IAM v. Eastern Air Lines*, No. 87–7123 (D.C.Cir. Feb. 16, 1988), *reprinted in* J.A. 487. Second, IAM asked the District Court to hold Eastern in con-

---

294, 298, 24 L.Ed.2d 325 (1969). To this end, the RLA imposes "rather elaborate machinery for negotiation, mediation, voluntary arbitration, and conciliation," *id.* at 148–49, 90 S.Ct. at 298, which is triggered when "[a] party desiring to effect a change of rates of pay, rules, or working conditions ... give[s] advance written notice" under section 6 of the RLA, 45 U.S.C. § 156. *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 378, 89 S.Ct. 1109, 1115, 22 L.Ed.2d 344 (1969).

"Minor" disputes, by contrast, involve the interpretation or application of specific provisions in existing collective bargaining agreements, and are resolved through a formal grievance process culminating in binding arbitration. 45 U.S.C. §§ 153, 184.

The RLA also contains specific provisions intended to prevent an employer from undermining a union's ability to represent its members. It states, for example, that "[e]mployees ... have the right to organize and bargain collec-

tively through representatives of their own choosing." 45 U.S.C. § 152 Fourth. To protect this right, the RLA makes it "unlawful for any carrier to interfere in any way with the organization of its employees." *Id.*

**2.** On October 2, 1987, both Eastern and IAM filed section 6 notices, 45 U.S.C. § 156, seeking to change their collective bargaining agreement. After a brief period of unsuccessful negotiations, Eastern declared an impasse and IAM invoked the services of the National Mediation Board. *See* 45 U.S.C. § 155.

**3.** Section 5.2 of the purchase agreement includes "employee protection provisions," which ostensibly require ASH to guarantee certain rights and benefits to Eastern employees transferring to ASH. J.A. 230–33. We express no opinion as to the meaning or legal effect of these or any other provisions contained in the purchase agreement.

tempt of the July injunction or, in the alternative, to issue a new preliminary injunction enjoining Eastern from spinning off the shuttle.

A hearing limited to IAM's contempt motion was held by the District Court on February 12, 1988. Nearly a month later, the court issued the March order, in which it adjudged Eastern in civil contempt for violating the July injunction. *IAM v. Eastern Air Lines*, No. 87–1720 (D.D.C. Mar. 10, 1988), *reprinted in* J.A. 491. It "further enjoined and restrained [Eastern] from taking any steps to separate" the shuttle "by sale or other means pending exhaustion of the mandatory dispute resolution procedures of the Railway Labor Act." *Id.*, J.A. 492. In a memorandum opinion released on the same day, the court explained that the July injunction "was directed not only to the proposed transfer to AGS but to any substantially similar proposal." *IAM v. Eastern Air Lines*, No. 87–1720 (D.D.C. Mar. 10, 1988), *reprinted in* J.A. 503. In its view, the shuttle deal was "not fundamentally different" from the fleet service transaction. *Id.*, J.A. 503. This appeal followed.[4]

## II. ANALYSIS

### A. *Jurisdiction*

#### 1. *28 U.S.C. § 1291*

■ IAM contends that this court lacks jurisdiction to entertain Eastern's appeal because civil contempt orders are not final orders that are immediately appealable under 28 U.S.C. § 1291.[5] IAM grounds its argument on a long line of cases stretching

back to *Doyle v. London Guar. & Accident Co.*, 204 U.S. 599, 603, 27 S.Ct. 313, 314, 51 L.Ed. 641 (1907), where the Supreme Court held that "an order punishing for contempt made in the progress of the case, when not in the nature of an order in a criminal proceeding, is regarded as interlocutory and to be reviewed only upon appeal from a final decree in the case." *See also SEC v. Elmas Trading Corp.*, 824 F.2d 732, 732 (9th Cir.1987); *Duell v. Duell*, 178 F.2d 683, 687 (D.C.Cir.1949). Although Eastern correctly notes that "[e]xceptions to the rule are plentiful," *Drummond Co. v. District 20, UMWA*, 598 F.2d 381, 383 (5th Cir.1979), none is applicable here.

Specifically, this is not a case where an immediate appeal should be permitted because, based "on a pragmatic assessment, it appears that nothing further remains to be done [in the District Court], notwithstanding the lack of formal termination." 15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3917, at 627 (1976); *see, e.g., Peabody Coal Co. v. Local Union Nos. 1734, 1508 & 1548, UMWA*, 484 F.2d 78, 84–85 (6th Cir.1973). To the contrary, IAM filed an amended complaint *after* the July injunction was issued in which it renewed its earlier request for permanent injunctive relief and a declaratory judgment. IAM also sought to begin discovery. We thus "presume the underlying litigation is still pending in district court, not having been informed otherwise by the parties." *Union of Professional Airmen v. Alaska Aeronautical Indus.*, 625 F.2d 881, 883 n. 2 (9th Cir.1980).[6]

---

**4.** On March 21, 1988, the District Court imposed sanctions on Eastern by ordering it, *inter alia*, to: (1) withdraw applications in which it had sought regulatory approval of the shuttle transaction; (2) post and mail notices of the March order to its employees; and (3) pay fines of $10,000 per day for further violations of the March order arising after April 5, 1988. *IAM v. Eastern Air Lines*, No. 87–1720 (D.D.C. Mar. 21, 1988), *reprinted in* J.A. 578. On April 5, Eastern reported to the court that it had complied with these directives.

**5.** 28 U.S.C. § 1291 provides in pertinent part: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the

district courts of the United States, ... except where a direct review may be had in the Supreme Court."

**6.** Because the March order and the accompanying memorandum opinion "involve[ ] considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963)), the "collateral order" doctrine is inapplicable. *See also Richardson–Merrell Inc. v. Koller*, 472 U.S. 424, 430, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985) (quoting *Fire-*

## 2. *28 U.S.C. § 1292(a)(1)*

■ Although no appeal may be taken here pursuant to 28 U.S.C. § 1291, Eastern correctly notes that 28 U.S.C. § 1292(a)(1) permits an immediate appeal from an interlocutory order that grants or modifies an injunction.[7] Because it believes that the shuttle transaction clearly falls within the broad language of the July injunction, IAM argues that the March order should be construed as a mere interpretation of the July injunction. Eastern disagrees. It claims that the March order must be construed as a new or modified injunction because the July injunction encompasses only the fleet service transaction that was before the District Court in June and July of last year.

■ The resolution of this dispute [8] obviously turns on the scope of the July injunction—"a question of law to be determined by the independent judgment of this Court." *Drummond*, 598 F.2d at 385. We are guided in our inquiry by *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 626 F.2d 1029 (D.C. Cir.1980), and section 9 of the Norris–LaGuardia Act, 29 U.S.C. § 109 (1982),[9] which together stand for the proposition that injunctions in cases involving or growing out of labor disputes must take a rifle-shot, rather than a shotgun, approach. In *Washington Post*, a union successfully sought an injunction requiring its employer to arbitrate grievances relating to employ-

ee discharges. The union later sought to have the employer adjudged in contempt of this injunction for refusing to arbitrate grievances relating to matters such as cost-of-living increases. This court affirmed the trial court's refusal to hold the employer in contempt, even though the injunction stated that the employer had to arbitrate "*all* grievances." 626 F.2d at 1031 (emphasis added). In so doing, this court emphasized that the trial court had "only discussed arbitration as it applied to the then pending employee discharge disputes" when it issued the injunction. *Id.* at 1030. The injunction's reach had to be limited, therefore, to transactions "of the same character that were factually before the court at that time." *Id.* at 1031; *see also Drummond*, 598 F.2d at 385 ("the injunction must be interpreted in light of the accompanying findings of the district court regarding the subject matter of the grievance underlying the work stoppage"); *New York Tel. Co. v. Communications Workers*, 445 F.2d 39, 50 (2d Cir.1971); FED.R. CIV.P. 65(d).

With these principles in mind, it is clear that the July injunction applies only to the AGS transaction, even though the injunction—like the order at issue in *Washington Post*—"is, on its face, unlimited in ... scope." *Drummond*, 598 F.2d at 385. There is nothing in the record from June and July of last year to suggest that the District Court had before it any transaction

*stone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981)) ("collateral order doctrine is a 'narrow exception'" to 28 U.S.C. § 1291).

**7.** 28 U.S.C. § 1292(a) provides in pertinent part: "[T]he courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court...."

**8.** We examine certain aspects of the merits of the case at this point solely to ascertain whether we have jurisdiction to entertain the appeal. We reject the view expressed in *Motorola, Inc. v. Computer Displays International, Inc.*, 739 F.2d 1149, 1155 & n. 9 (7th Cir.1984), that an appellate court may simply assume that, in close

cases, jurisdiction exists under 28 U.S.C. § 1292(a)(1), and then proceed to reach a decision on the merits, even if it turns out that an injunction had *not* been granted or modified.

**9.** 29 U.S.C. § 109 provides in full:

No restraining order or temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court in the record of the case prior to the issuance of such restraining order or injunction; and every restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court as provided in this chapter.

other than the one involving the fleet service employees. *See id.* at 387 ("No pattern of repeated work stoppages was submitted by the Company at [the] time [the injunction was issued] from which the court might have concluded that future strikes were likely.").[10]  Indeed, the District Court's oral findings of fact and conclusions of law, *see* J.A. 152–54, were properly limited to that specific transaction. *Virginian Ry. v. System Fed'n No. 40*, 300 U.S. 515, 563, 57 S.Ct. 592, 607, 81 L.Ed. 789 (1937) ("The evident purpose of [section 9 of the Norris–LaGuardia Act is] ... to confine the injunction to the particular acts complained of and found by the court."). Eastern was not on notice, therefore, that the shuttle sale would be encompassed by the July injunction. *See Common Cause v. NRC*, 674 F.2d 921, 927 (D.C.Cir.1982) (an injunction must "give adequate notice ... of the nature of the prohibited activity"); *United States Steel Corp. v. UMWA*, 519 F.2d 1236, 1245–46 (5th Cir.1975), *cert. denied*, 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976).  For these reasons, when the District Court enjoined the shuttle transaction in the March order, it necessarily modified the July injunction or issued a completely new injunction.  It is immaterial that the court characterized the March order as a finding of contempt.  "[A]n injunction does not cease to be appealable under section 1292(a)(1) merely because it is contained in an order for civil contempt." *Szabo v. U.S. Marine Corp.*, 819 F.2d 714,

718 (7th Cir.1987); *see also I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus.*, 789 F.2d 21, 23–24 (D.C.Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986).  Accordingly, we have jurisdiction over Eastern's appeal under 28 U.S.C. § 1292(a)(1).[11]

## B.  Merits

### 1.  The July Injunction

Eastern voluntarily abandoned its initial appeal from the July injunction and agreed to abide by its terms.  As a result, it may not challenge that order in this appeal. *See Szabo*, 819 F.2d at 718; *Bethlehem Mines Corp. v. UMWA*, 476 F.2d 860, 863–64 (3d Cir.1973).  We thus assume for the purposes of this appeal that the July injunction is valid.

### 2.  The Contempt Order

▮▮▮  The standard of review on an appeal from a finding of civil contempt is whether the District Court abused its discretion. *Afro–American Patrolmen's League v. City of Atlanta*, 817 F.2d 719, 723 (11th Cir.1987).  Having based jurisdiction on 28 U.S.C. § 1292(a)(1) in this case *because* the District Court issued a new or modified injunction in enjoining the shuttle transaction, we are constrained to conclude that the District Court abused its discretion in simultaneously holding Eastern in contempt of the July injunction.[12]  We reject

---

**10.** There need not be absolute congruence between the transaction before the district court when it issues an injunction and the transaction before it when it considers a motion for contempt.  If, for example, Eastern had announced in February 1988 that it had decided to transfer involuntarily its fleet service employees into a wholly owned entity other than AGS, the District Court would have been free to hold Eastern in contempt of the July injunction.  This court would lack jurisdiction over an immediate appeal from such a contempt order for the reason stated in the previous subsection.

**11.** Under *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), an order which has the practical effect of granting an injunction is appealable under 28 U.S.C. § 1292(a)(1) only if it might have a "serious, perhaps irreparable, consequence," and if the

order can be effectively challenged only by immediate appeal. *Id.* at 84 (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955)).  Even assuming that these conditions have not been met, we would still find jurisdiction under section 1292(a)(1), pursuant to this court's holding in *I.A.M. National Pension Fund*: "*Carson* does not apply to an order clearly granting or denying a specific request for injunctive relief; such orders are always appealable under § 1292(a)(1)."  789 F.2d at 24 n. 3.  Because IAM moved in the alternative for a preliminary injunction, this condition was satisfied in the instant case.

**12.** We appreciate the District Court's concern that Eastern's announcement of the shuttle deal may have suggested a disregard for the spirit of the July injunction.  Nonetheless, this is an in-

the Seventh Circuit's view that, even though jurisdiction is based on 28 U.S.C. § 1292(a)(1), an appellate court may nonetheless conclude that the actions cited in a civil contempt order fall within the terms of an earlier injunction. *See Motorola, Inc. v. Computer Displays Int'l, Inc.*, 739 F.2d 1149, 1155–59 (7th Cir.1984). Even if we were willing to entertain this analytically perplexing approach in some cases, we would not do so in the labor area, where the Norris–LaGuardia Act mandates that injunctions are to be construed in a narrow fashion.

This is not to say, however, that the District Court lacks *jurisdiction* to consider a request for an injunction barring the shuttle sale. IAM's original complaint is sufficiently broad to encompass the shuttle transaction; thus, if the union renews its request for injunctive relief covering the shuttle deal, and if there are adequate factual, equitable and legal grounds to support such an injunction, the District Court may fashion appropriate relief. *See Southern Ry. v. Brotherhood of Locomotive Firemen & Enginemen*, 337 F.2d 127, 133–34 (D.C.Cir.1964). Our sole point is that, in issuing the March order, the District Court did not weigh the relevant criteria, nor did it make the factual findings, necessary to support the issuance of a new or modified injunction. We thus remand to the District Court, where IAM is free to move for a new or modified injunction.

█ In considering IAM's request for a new or modified injunction, the District Court should be mindful of several points that could loom significant: (1) the decision as to whether the shuttle sale raises a bargainable issue must be made in light of the principle that the "scope of bargainability" under the RLA is "extremely broad" and "has comprehended fields frequently reserved to management in other industrial contexts," *Brotherhood of R.R. Trainmen v. Akron & Barberton Belt R.R.*, 385 F.2d 581, 601 (D.C.Cir.1967), *cert. denied*, 390

U.S. 923, 88 S.Ct. 852, 19 L.Ed.2d 983 (1968); *see also First Nat'l Maintenance Corp. v. NLRB*, 452 U.S. 666, 687 n. 23, 101 S.Ct. 2573, 2585, n. 23, 69 L.Ed.2d 318 (1981) (RLA is "not coextensive with the National Labor Relations Act and the Board's jurisdiction over unfair labor practices"); (2) if the shuttle sale is analogous to the closing of a hub, the abandonment of a route or the sale of assets, then a question may be raised whether, under the parties' established bargaining tradition, the proposed action is subject to bargaining, *see United Indus. Workers of Seafarers Int'l Union v. Board of Trustees*, 351 F.2d 183, 191 (5th Cir.1965) ("what carriers must legally bargain about is affected by what is in fact bargained about in the railroad world"); and (3) if the shuttle sale raises *only* a "minor" dispute, then the union's grievance may be subject to mandatory arbitration, *see IAM v. Eastern Airlines*, 826 F.2d 1141 (1st Cir.1987), in which event, of course, this action should be dismissed.

### III. CONCLUSION

IAM will have up to 10 days after the issuance of this court's mandate to request a temporary restraining order (precedent to a preliminary injunction) covering the shuttle transaction. If no temporary restraining order or injunctive relief is granted before the eleventh day after the issuance of this court's mandate, then the March order shall dissolve.[13] If a temporary restraining order is granted, the District Court shall allow discovery and conduct a hearing pursuant to the requirements of the Norris–LaGuardia Act and the federal rules to determine whether to issue a preliminary injunction.

The judgment of contempt is hereby vacated, and the case is remanded for further proceedings consistent with this opinion.

*So Ordered.*

---

sufficient basis upon which to rest a finding of contempt where the District Court has issued a new or modified injunction.

**13.** It is evident from the memorandum opinion accompanying the March order that the District

Court believed that some injunctive relief would have been warranted against the shuttle transaction. For this reason, we decline simply to vacate that order. We express no opinion, however, as to whether such injunctive relief should be granted.