902 F.2d 1565
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Larry MARSHAK, Plaintiff-Appellant,
v.
Michael BRIDGE, d/b/a Insight Talent Agency; Insight Talent
Agency, Inc., Defendants,
v.
Willie B. PINKNEY, Third Party Defendant-Appellee.
 No. 89-2023.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1990.
Decided May 2, 1990.
Rehearing Denied May 24, 1990.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. James B. McMillan, Senior District Judge. (CA-82-566-M-C-C)
 Robert J. Berman, Hackensack, N.J. (Argued), for Appellant; Raymond E. Owens, Jr., Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., on brief.
 Lawrence E. Feldman, Needle & Feldman, Philadelphia, Pa., (Argued), for appellees; John J. Barnhardt, III, Barbara K. Caldwell, Bell, Seltzer, Park & Gibson, Charlotte, N.C., on brief.
 W.D.N.C.
 AFFIRMED.
 Before K.K. HALL, SPROUSE and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Larry Marshak appeals from an order of the district court finding him in contempt of a consent judgment entered between him and Willie B. Pinkney, fining him $5,000.00 payable to the court, and awarding Pinkney attorney's fees. Finding no error, we affirm.
 
 I.
 
 2
 Marshak owns the trademark "Drifters," the name of a rock-and-roll singing group which has been in existence, in some form or another, since the 1950's. Pinkney was a member of the group in the 1950's and still performs under the name "The Original Drifters." This case is the most recent skirmish in the nearly decade-long battle between the two concerning their relative rights to the work of the Drifters.
 
 
 3
 In November 1983, the two entered into a consent judgment in the Western District of North Carolina which attempted to settle litigation over this dispute.[1] Paragraph eleven of the judgment reads:
 
 
 4
 11. If any performance of Willie B. Pinkney and his musical performing group includes any act which, in the reasonable judgment of Larry Marshak, would be likely to mislead or confuse a reasonable person attending such performance into believing that Willie B. Pinkney and/or his musical performance is THE DRIFTERS or is presently associated with THE DRIFTERS, or that Willie B. Pinkney and/or his musical performing group has rights in the mark THE DRIFTERS, Larry Marshak or his attorneys will submit a letter to Willie B. Pinkney's attorneys of record herein setting forth the specific acts which are alleged to be confusing or misleading, and the specific dates and locations where each such act occurred. Within twenty (20) days following receipt of any such letter, Willie B. Pinkney's attorneys shall submit a written response to Larry Marshak or his attorneys which shall include a full and complete response to the allegations of Larry Marshak and a statement of corrective steps, if any, to be taken by Willie B. Pinkney. If, within ten (10) days following the submission of such response, the parties have not been able to resolve the matter covered by the exchange of correspondence on a mutually satisfactory basis, Larry Marshak shall have the right to apply to this Court for any relief deemed to be warranted by this Court relating to the acts set forth in such correspondence.
 
 
 5
 After entry of the consent judgment, no litigation relevant to the instant appeal arose between the parties until January 1988, when Marshak filed suit against Pinkney in New Jersey district court seeking to enjoin him from holding several scheduled performances. Marshak contended that the promotion of these performances infringed upon his trademark. Prior to filing the suit, Marshak did not comply with p 11 of the consent judgment. Over two weeks after filing the action, however, he did send a letter to Pinkney's counsel which invoked p 11 and specifically complained of a January 29, 1988, performance by Pinkney.
 
 
 6
 On March 1, 1988, a hearing was held in New Jersey on Marshak's request to enjoin Pinkney from holding future performances. Pinkney argued to the court that under the terms of the 1983 consent judgment, Marshak could not bring the suit without first complying with p 11. On March 7, 1988, the court rejected Pinkney's argument, but refused to enjoin Pinkney from performing. Instead, it preliminarily enjoined Pinkney from any further violations of Marshak's trademark, or the 1983 consent judgment, and ordered that Pinkney's salary be held in escrow pending the determination of the controversy. A written order was issued on June 13, 1988, which Pinkney appealed to the Third Circuit. Marshak v. Pinkney, Civ. No. 88-519 (NLS) (D.N.J.).
 
 
 7
 On April 18, 1988, Pinkney applied in the Western District of North Carolina for a rule to show cause why Marshak should not be held in contempt of the 1983 consent judgment for not complying with p 11 before filing the New Jersey suit. A hearing was held in September 1988 and on October 3, 1988, the district court found Marshak in contempt. Subsequently, Marshak moved for reconsideration. The motion was denied, and on January 4, 1989, the district court issued a written opinion which fined Marshak $5,000.00, payable to the court, and ordered him to pay Pinkney's attorney's fees. This appeal is taken from this order.
 
 
 8
 On January 17, 1989, the Third Circuit affirmed the actions of the New Jersey district court. Marshak v. Pinkney, No. 88-5525 (3d Cir. Jan 17, 1989) (unpublished). In footnote 1 of the court's opinion, the court noted that because the North Carolina contempt order was not before the New Jersey district court when it issued the preliminary injunction, that fact could not be considered on appeal. However, the court did encourage Pinkney to present this new development to the New Jersey district court by motion to alter or amend the preliminary injunction. Id. at 7-8. Pinkney made such a motion along with a motion for transfer of venue. On June 15, 1989, the New Jersey district court granted the motion for transfer. Consequently, the New Jersey litigation is now in the Western District of North Carolina.[2]
 
 II.
 
 9
 Marshak raises several arguments against the district court's contempt finding, but, in essence, he challenges it on three grounds. First, he contends that p 11 applies only to litigation over misleading "performances" by Pinkney, while the New Jersey litigation concerns misleading "promotion" of Pinkney performances. Marshak argues that p 11 was thus inapplicable and, consequently, he was not in contempt of the consent judgment when he failed to follow its terms. Second, Marshak contends that the consent judgment was ambiguous and subject to differing reasonable interpretations. He argues that his interpretation, that p 11 did not apply to the New Jersey litigation, was reasonable and, accordingly, he should not be held in contempt. In support of his position, he points to the New Jersey district court's decision holding p 11 inapplicable. Lastly, he argues that because of the punitive nature of the court's sanction, the district court's contempt finding was criminal, not civil, and that Pinkney failed to prove contempt beyond a reasonable doubt. Because it is a threshold issue, we address the final argument first.[3]
 
 
 10
 The determination of whether a given contempt order is civil or criminal turns on the order's purpose. Generally speaking, if the order is intended to coerce prospective conduct, it is civil; if it is intended to punish past conduct, it is criminal. In Re Howe, 800 F.2d 1251, 1253 (4th Cir.1986). The distinction between the two is important because proof of criminal contempt must be beyond a reasonable doubt, while proof of civil contempt need only be clear and convincing. Wright, Federal Practice and Procedure: Criminal 2d Sec. 705. We have no difficulty in finding the proceedings below civil in nature.
 
 
 11
 While Marshak concedes that Pinkney sought only a finding of civil contempt and that the award of attorney's fees was coercive rather than punitive, he contends that the $5,000.00 fine payable to the court was clearly punitive in nature. We disagree. In In Re Howe, we expressly rejected this same argument and held that where the overall nature of the contempt order is coercive, assessment of a fine payable to the court does not, by itself, make the contempt order criminal. Id. at 1253 n. 1. That is precisely the situation presented here. The fine was part of a coercive order which intended to compensate Pinkney for the past contempt by awarding attorney fees, and to ensure future compliance with the consent judgment by assessing a fine. A reasonable fine made payable to the court is certainly an appropriate means to attain compliance with a consent judgment. Because these proceedings were civil, Marshak's contempt need only have been shown by clear and convincing evidence. As we discuss below, this burden of proof was easily met.
 
 III.
 
 12
 In recognition of the fact that contempt is a matter uniquely within a district court's discretion, we will not overturn a finding of civil contempt unless an abuse of discretion has been shown. E.g. Int'l Assoc. of Machinists v. Eastern Airlines, 849 F.2d 1481, 1486 (D.C.Cir.1988). Our review of the record reveals no such abuse.
 
 
 13
 First, we agree with the district court that p 11 was intended to apply to situations such as the New Jersey litigation. While the provision speaks of only "performances," a fair reading of p 11, taken in context with the entire consent judgment, makes clear that the provision encompassed the promotion of performances as well as the performances themselves. See AMF, Inc. v. Jewett, 711 F.2d 1096, 1100-02 (1st Cir.1983) (consent judgment interpretation governed by rules of contract interpretation). The striking similarity between the 1983 litigation and the New Jersey litigation,[4] as well as Marshak's own action of sending the p 11 letter, albeit two weeks too late, lends strong support to this interpretation. We are in full accord with the district court that p 11 applied to the New Jersey litigation.
 
 
 14
 Likewise, we agree with the lower court that the language of p 11, when read in context with the rest of the consent judgment, makes clear its applicability to the New Jersey litigation. Further, we find that the record amply supports the district court's finding of fact that Marshak did not reasonably believe that p 11 was inapplicable. The decision of the district court in New Jersey that p 11 was not a prerequisite to suit and the subsequent affirmance by the Third Circuit does not undermine this conclusion. The New Jersey court's grant of an injunction is not dispositive of the applicability of p 11 because it was not a final adjudication on the merits. Rather, it was merely a prediction of how the merits would be resolved to determine if equitable relief was justified. Such an order has no res judicata effect. See Hunter Douglass, Inc. v. Sheet Metal Workers Int'l, 714 F.2d 342, 346 (4th Cir.1983). Similarly, the Third Circuit's affirmance tacitly called the holding of the New Jersey court into doubt by expressly acknowledging that the injunction may no longer have been appropriate in view of the instant contempt finding. Finally, we do not find the New Jersey court's decision persuasive on either the proper interpretation of p 11 or on whether Marshak's proposed interpretation of p 11 is reasonable. Given its intimate familiarity with this litigation, the North Carolina court was in a far better position to rule on the meaning of p 11 and Marshak's understanding thereof.
 
 IV.
 
 15
 In sum, we find this contempt order to be civil in nature and that the district court's finding of contempt was not an abuse of discretion. Accordingly, the lower court's order is affirmed.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 This litigation originated as a Lanham Act suit filed by Marshak against Michael Bridge, an agent who promoted Pinkney performances. Pinkney was brought into the suit as a third party defendant by Bridge
 
 
 [2]
 On February 21, 1989, Marshak moved the North Carolina district court to hold Pinkney in contempt for violation of the New Jersey court's order. It is unclear from the record whether this motion has been ruled upon
 
 
 [3]
 Although we have chosen not to discuss it at length, we have reviewed Marshak's Lanham Act claim under 15 U.S.C. Sec. 1116 and find it to be meritless. We also affirm the district court's denial of Marshak's motion for renewal and reconsideration
 
 
 [4]
 The earlier litigation also directly concerned promotion of Pinkney performances. Further, other portions of the consent judgment expressly address Marshak's right to sue third parties over promotion of "Original Drifters" performances. Thus, it is disingenuous at best for Marshak to contend that p 11 was not intended to apply to the instant litigation