**PUBLIC SERVICE COMPANY OF COLORADO, Plaintiff,**

and

**United States of America, Plaintiff–Appellant,**

v.

**Phillip E. BATT, in his official capacity as Governor of the State of Idaho; State of Idaho, Defendants–Appellees.**

No. 95–35608.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1995.

Decided Sept. 28, 1995.

John A. Bryson, Assistant Attorney General, United States Department of Justice, Washington, D.C., for plaintiff-appellant.

---

Jeffery J. Ventrella, Elam & Burke, Boise, Idaho, C. Nicholas Krema, Deputy Attorney General, Boise, Idaho, for defendants-appellees.

Before EUGENE A. WRIGHT, ALARCON and CANBY, Circuit Judges.

## OPINION

CANBY, Circuit Judge:

### I.

This case arises from the efforts of the United States, vigorously opposed by the State of Idaho, to ship spent nuclear fuel to the Idaho National Engineering Laboratory for storage. The United States appeals the district court's order "continuing" an earlier injunction that prevents it from making such shipments. The determinative threshold question is whether the original injunction, issued and then modified in 1993, remains in effect of its own force, or whether the recent order of the district court modified or extended ("continued") it when it otherwise would have expired of its own force. We conclude that the 1993 injunction remained in force of its own effect, and that it was not modified or extended by the district court's recent order. The latter order is consequently not appealable as an order "granting, continuing, [or] modifying" an injunction within the meaning of 28 U.S.C. § 1292(a)(1). We therefore dismiss the appeal for lack of appellate jurisdiction.

### II.

On June 28, 1993, the district court issued an order requiring the Department of Energy to prepare an Environmental Impact Statement (EIS) regarding the effects on the natural and human environment of "all major federal actions involving the transportation, receipt, processing, and storage of spent nuclear fuel at the Idaho National Engineering Laboratory," and setting forth a reasonable range of alternatives to these actions. *Public Service Co. of Colorado v. Andrus*, 825 F.Supp. 1483, 1511 (D.Idaho 1993). The order also enjoined the Department from transporting, receiving, processing, and storing spent nuclear fuel at the Laboratory until "the comprehensive environmental impact statement is completed, reviewed, and any challenges to the statement are resolved." *Id.* Finally, the order provided that the district court would retain jurisdiction over the case for the purpose of hearing and resolving disputes between Idaho and the Department "regarding the adequacy of the final environmental impact statement. Thereafter, upon good cause showing, the injunction shall be dissolved." *Id.*

Shortly thereafter, the Department sought permission from the State for certain emergency shipments of spent fuel to the Laboratory. In August 1993, the Department and the State of Idaho[1] entered an agreement that, if the district court would enter their proposed order modifying the court's June 1993 order, the United States would neither appeal the June order nor seek legislation to alter or supersede that order. The proposed order was adopted and entered by the district court on December 22, 1993.[2]

The December 1993 order states that

The court's Memorandum Opinion and Order of June 28, 1993, shall remain in full force and effect, subject to the modifications set forth below....

The order then provides deadlines for the Department's preparation of the EIS required by the June 1993 order, including a requirement that, thirty days after publication of the notice of availability of the EIS, the Department issue and publish a "record of decision based upon the final EIS." The

---

1. The Governor of Idaho is also a party to this litigation. We will refer to the State of Idaho and the Governor collectively as the "State of Idaho."

2. Initially, the district court added a modification to the parties' proposed order before entering it. The United States appealed to this court, and we vacated the order and remanded, declaring that the district court abused its discretion by modifying the terms of the parties' negotiated settlement. On remand, the district court entered the Amended Order Modifying Order of June 28, 1993.

December 1993 order then sets forth the fuel shipments that will be permitted in the meantime, and introduces the list with the following crucial clause:

> The injunction against any further shipments of any more spent nuclear fuel of any type to the Idaho National Engineering Laboratory ... shall remain in full force and effect unless and until [the Department of Energy] issues a record of decision based upon the EIS required by the Order of June 28, 1993, except as follows: [listing permitted shipments].

On April 28, 1995, the Department issued its final EIS. On May 17, 1995, the State of Idaho filed a motion to reopen the proceedings with the district court. The State maintained that the EIS did not comply with the court's order, and asserted that the State would challenge the EIS' legal and factual sufficiency. The State also noted that "apparently there is a divergence of opinion concerning the continuing force and effect" of the injunction after the record of decision was completed and signed by the Secretary of Energy.

On May 19, 1995, the district court issued an order granting the State's motion. In the order, the court stated that

> [a]s to the concerns raised by Idaho regarding whether the [June 28, 1993] injunction ordered by [the district court] will remain in effect, the court finds good cause to continue this injunction until this matter is finally resolved.

The court noted that the district court's original order of June 1993 indicated that the injunction would remain in effect until the EIS was completed, reviewed, and had challenges against it resolved.

On June 1, 1995, the Department issued its record of decision. The next day, the United States filed in the district court a Notice of Compliance with the December 1993 order. In response, the State filed an Objection to Notice of Compliance arguing that the EIS did not comply with the requirements of the court's June 1993 order. The United States then filed an emergency motion to vacate or, in the alternative, to modify the district court's order of May 19, 1995, to permit 12 shipments of Naval spent nuclear fuel to the Laboratory in June. On June 26, 1995, although the district court had not yet ruled on the United States' motion, the United States filed a notice of appeal to this court, seeking review of the district court's May 19, 1995, ruling "continuing" the 1993 injunction.

On June 27, 1995, the district court issued an order denying the United States' motion. The district court explained that it had continued the injunction because it believed that the original injunction's provision for the district court to resolve disputes regarding the EIS before dissolving the injunction was still in effect. In response to the Department's assertion that urgent national security interests required a lifting of the injunction, a point also pressed on this appeal, the district court established an abbreviated discovery schedule. The court required briefing to be completed in the district court by September 1, 1995, and stated that the court would render its decision within 30 days thereafter.

### III.

In appealing the May 1995 order, the United States argues that the June 1993 injunction was modified by the December 1993 order so that it would automatically dissolve when the record of decision was issued. If that proposition were correct, then we would have jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1), which provides:

> ... the courts of appeals shall have jurisdiction of appeals from:
>
> (1) Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions ...

If, however, the 1993 injunction is still in effect by force of its own terms, then the district court's May 1995 order did not modify or continue it, and we lack jurisdiction over this appeal. *See In re Fugazy Exp., Inc.*, 982 F.2d 769, 777 (2d Cir.1992) (an order "continues" an injunction under Section 1292(a)(1) only when, without such order, the injunction would dissolve by its own terms); *Motorola, Inc. v. Computer Displays Internat'l, Inc.*, 739 F.2d 1149, 1155 (7th Cir.1984) (an order "modifies" an injunction

only if it substantially alters the legal relations of the parties provided by the injunction).

There is little doubt that, if the June 1993 order had not been amended in December 1993, the original injunction would still be in effect of its own force. The June 1993 order enjoined the Department from making shipments "until the comprehensive environmental impact statement is completed, reviewed, and any challenges to the statement are resolved." *Public Service Co.*, 825 F.Supp. at 1511. The order reserved the district court's jurisdiction to resolve such challenges, and further provided that "[t]hereafter, upon good cause showing, the injunction shall be dissolved." *Id.* At the moment, Idaho has challenged the EIS and the district court has not yet resolved that challenge or dissolved the injunction.

The crucial issue, therefore, is whether the December 1993 amending order changed these durational terms of the June 1993 order. We conclude that it did not.[3]

The government relies on the provision of the December 1993 order that introduced the list of shipments that would be permitted during the pendency of the injunction. As we have already pointed out, that provision states that the June 1993 "injunction against any further *shipments* ... shall remain in full force and effect unless and until the [Department] issues a record of decision *based upon the EIS required by the Order of June 28, 1993.*" (Emphasis added). Although the language is superficially susceptible to the interpretation the government gives it—that the injunction ends upon issuance of the record of decision—a contrary interpretation is mandated both by the words of the two 1993 orders and the context in which the disputed language appears. The "EIS required by the Order of June 28, 1993" was an EIS to which the court had resolved all challenges. Idaho's position from the beginning was that the Department was failing to assess the environmental impact of its actions in good faith, and the

district court's Memorandum Opinion reflected that view. *See Public Service,* 825 F.Supp. at 1496–97, 1499, and 1509. The government's interpretation of the December 1993 agreement would permit the government to end the injunction by the publication of *any* EIS, however flawed, and the issuance of a record of decision based upon it. We reject a reading that would leave the injunction that toothless.

The June 1993 order provided for dissolution of the injunction upon a showing of good cause; that is, a showing of compliance with the requirements for termination. The December 1993 order stated at its outset that the provisions of the June 1993 order remained "in full force and effect, subject to the modifications set forth below." Nothing in the December 1993 order purports directly to modify the provision for dissolution of the injunction upon a showing of good cause. The December 1993 clause does not provide that the injunction shall continue in effect until the record of decision "and no longer" or that it shall continue until the record of decision and then "be dissolved without further order of the court." It simply provides that the injunction shall continue in effect until the record of decision.

The disputed clause of the December 1993 order introduces a list of permitted shipments which are exceptions to the June 1993 order, and provides that the injunction against "shipments" should otherwise remain in full effect until the record of decision based upon the EIS required by the June 1993 order. The June 1993 order applies, however, to far more than "shipments." It enjoins "receipt, processing, and storage" of spent fuels at the Laboratory. If the December 1993 clause were intended to modify the June 1993 injunction in such drastic fashion, it certainly would have so modified *all* of its operative terms.

The primary thrust of the clause, introducing as it does a list of interim permitted shipments, is to ensure that the permission of such shipments does not imply that the

---

**3.** We review *de novo* the terms of the December 22 Amended Order. *Internat'l Ass'n of Machinists v. Eastern Airlines, Inc.,* 849 F.2d 1481, 1485 (D.C.Cir.1988) (court of appeals' determination

as to whether an order modifies or merely interprets an injunction requires independent review of the scope of the original injunction).

injunction ceases to exist prior to the record of decision. The clause does not, as we read it, speak to the manner in which the injunction shall end. We therefore agree with the district court that the December 1993 order did not change the provisions of the June 1993 order that the injunction would remain in effect until the district court resolved challenges to the EIS and dissolved the injunction upon a showing of good cause.

Because the June 1993 injunction, as amended by the December 1993 order, is still in effect, the district court's order of May 1995 did not "continue" or modify it, nor did it constitute the entry of a new injunction. We therefore lack jurisdiction to review the May 1995 order. *See In re Complaint of Ingram Towing Co.,* 59 F.3d 513, 516 (5th Cir.1995) (court of appeals lacks jurisdiction over appeals of orders in which a district court merely enforces or interprets a previous injunction).

**APPEAL DISMISSED.**

ALARCON, Circuit Judge, dissenting:

I respectfully dissent.

My view of the result we should reach in this case can be expressed concisely in the following logical syllogism:

A party has the right to interlocutory review of an order modifying or continuing in effect an injunction beyond its present termination date, pursuant to 28 U.S.C. § 1292(a)(1).[1]

On May 19, 1995, the district court found that "good cause" existed to extend the injunction that was due to expire *ex proprio vigore,* upon the issuance of the record of decision by the United States Department of Energy, "no later than June 1, 1995."

Because Judge Lodge's order modified the June 1, 1995 termination date, as spelled out in the December 22, 1993 amended injunction order, by extending it "until this matter is finally resolved," this court has jurisdiction to review this appeal pursuant to section 1292(a)(1).

The majority has concluded that Judge Lodge's May 19, 1995 order did not modify or extend the termination date of the injunction. I cannot join their number.

I

This dispute had its genesis in actions filed by the Public Service Company on February 9, 1991, and the United States of America on February 19, 1991, against the Governor of Idaho and the State of Idaho regarding a dispute over shipments of spent nuclear fuel from the Fort St. Vrain Nuclear Generating Station in Colorado to the Idaho National Engineering Laboratory for storage in its Irradiated Fuel Storage Facility. On April 22, 1991, Governor Andrus and the State of Idaho (hereinafter collectively "Idaho") filed a counterclaim against the United States. Idaho sought declaratory and injunctive relief. Idaho challenged the United States Department of Energy's conclusion that a formal environmental impact statement was not required by the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.* Idaho and the United States filed cross-motions for summary judgment.

On June 28, 1993, Senior District Judge Harold Ryan granted Idaho's motion for a summary judgment. The district court ordered the United States Department of Energy to prepare an environmental impact statement and issued the following injunction:

IT IS FURTHER ORDERED that the Department of Energy should be, and is hereby, ENJOINED from any further transportation, receipt, processing, and storage of spent nuclear fuel at the Idaho National Engineering Laboratory until the comprehensive environmental impact statement is completed, reviewed, and any challenges to the statement are resolved.

IT IS FURTHER ORDERED that the court shall retain jurisdiction over this case for the purpose of hearing and resolving any dispute between Idaho and the Department of Energy regarding the adequa-

---

**1.** Section 1292(a)(1) expressly provides in pertinent part that "the courts of appeal shall have jurisdiction over appeals from: [i]nterlocutory orders ... continuing, modifying injunctions...."

cy of the final environmental impact statement. Thereafter, upon good cause showing, the injunction shall be dissolved. In the interim, this action is hereby ADMINISTRATIVELY TERMINATED. The Clerk of Court shall administratively terminate this action in his records, without prejudice to the right of the parties to reopen the proceedings for good cause shown, for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation.

Judge Ryan's June 28, 1993 order expressly provided that the injunction would continue in effect, "until the comprehensive environmental impact statement is completed, reviewed, and any challenges to the statement are resolved.... Thereafter, upon good cause showing, the injunction shall be dissolved."

## II

On August 9, 1993, Idaho and the United States reached an agreement to compromise and settle their legal dispute in this matter. In exchange for the modifications to the June 28, 1993 injunction, the United States agreed to give up the right to appeal or seek other relief from the district court's June 28, 1993 order, or to seek legislation to nullify it, without Idaho's consent.

The agreement between the parties reads as follows:

The Court's June 28th Order—including the injunction against future shipments of spent nuclear fuel to the INEL while DOE complies with NEPA—shall remain in full force subject only to the clarifications and modifications set forth herein.

In preparing the court-ordered environmental impact statement, DOE shall:

1. On or before November 1, 1993, issue an EIS implementation plan. The document will describe the scope of the EIS and the plan for its preparation. DOE shall, in formulating the plan, consult with Idaho. When it is complete, Idaho will have the opportunity to review and comment on the plan. DOE

shall consider Idaho's comments on the plan in preparing the EIS.

2. On or before June 30, 1994, issue a draft EIS. The Navy will cooperate in the preparation of the draft EIS and will do all that is necessary to prepare its portion of the document.

3. On or before April 30, 1995, issue a final EIS. DOE will, however, use its best efforts to complete the final EIS sooner. The Navy will cooperate in the preparation of the final EIS and will do all that is necessary to prepare its portion of the document.

4. Thirty days after the issuance of the final EIS and in no event later than June 1, 1995, issue a record of decision based upon the final EIS.

*Until the issuance of the record of decision, the Court's injunction will remain in effect....* (emphasis added).

The parties submitted a stipulation to the district court to modify the June 28, 1993 order. Attached to the stipulation was a proposed order which states that:

The parties have stipulated to the Court entering this Order. Having been advised of the stipulation's premises and good cause appearing,

IT IS ORDERED:

1. The Court's Opinion and Order of June 28, 1993, shall remain in full force subject to the modifications set forth below.

2. The U.S. Department of Energy (DOE) shall, in preparing the environmental impact statement (EIS) required by the Court's Opinion and Order of June 28, 1993, meet the following deadlines:

a. On or before November 1, 1993, DOE shall issue a document that describes the scope of, and sets forth the plan for preparing, the EIS. In formulating this implementation plan, DOE shall consult with the State of Idaho. DOE also shall afford the State of Idaho an opportunity to review and comment on the implementation plan, and it shall consider any such comments in preparing the EIS.

b. On or before June 30, 1994, DOE shall complete a draft EIS and publish

in the *Federal Register* a notice advising the public of the document's availability.

c. On or before April 30, 1995, DOE shall complete a final EIS and publish in the *Federal Register* a notice advising the public of the document's availability.

d. Thirty days after publishing in the *Federal Register* the notice of the final EIS's availability, and in no event later than June 1, 1995, DOE shall issue and publish in the *Federal Register* a record of decision based upon the final EIS.

3. *The injunction against any further shipments of any more spent nuclear fuel of any type to the Idaho National Engineering Laboratory shall remain in full force unless and until DOE issues a record of decision based upon the environmental impact statement required by the Court's Opinion and Order of June 28, 1993....* (emphasis added).

Section three of the proposed order also provided that:

d. Additional shipments of spent nuclear fuel from the U.S. Naval Nuclear Propulsion Program will be permitted only if:

(1) The Secretary of the Department of Defense certifies that national security is threatened by the inability of the U.S. Naval Nuclear Propulsion Program to transport such shipments of spent nuclear fuel to the Idaho National Engineering Laboratory (the certification shall specify the types and quantities of spent nuclear fuel to be transported);

(2) The Governor of the State of Idaho is provided an opportunity to review the certification and supporting documents that would be submitted to the Court ... and concurs in the certification; or

(3) *If the Governor of the State of Idaho disagrees with the Secretary of Defense's certification, the Court so orders pursuant to a motion to modify the injunction filed by the United States under the Federal Rules of Civil Procedure.* (emphasis added).

### III

The district court entered an order on September 21, 1993 which begins with the words "[t]he parties have stipulated to the Court entering this Order." The court's order incorporated each of the provisions of the order proposed by the parties except for the proposal that a motion to modify the injunction would be allowed if the Governor of Idaho disagrees with the certification of the Secretary of Defense that additional shipments of spent fuel are necessary because national security is threatened.

Instead, the court's September 21, 1993 order reads in pertinent part as follows: "If the parties cannot agree as to the certification by the Secretary of Defense, no shipments will be allowed, and *no additional motions to modify the court's prior order will be entertained.*" (emphasis added).

The United States filed an appeal from the September 21, 1993 order. On November 2, 1993, we summarily reversed the district court's order, holding that the district court abused its discretion by modifying the terms of a negotiated settlement. *United States of Am. v. Andrus,* No. 93–35961 (9th Cir. Nov. 2, 1993).

On December 22, 1993, the district court issued a new order modifying the June 28, 1993 injunction. This order incorporated all the provisions of the proposed order that reflected the parties' agreement. In language pertinent to this appeal, the December 22, 1993 order states:

The injunction against any further shipment of any more spent nuclear fuel of any type to the Idaho National Engineering Laboratory ("INEL") *shall remain in full force and effect unless and until DOE issues a record of decision based upon the EIS required by the Order of June 28, 1993....* (emphasis added).

### IV

In compliance with the December 22, 1993 order, the United States Department of Energy published its final environmental impact statement on April 28, 1993, two days before the deadline imposed by the court. The public announcement of the final environmental impact statement also gave notice that a record of decision would be issued by June 1, 1995. The December 22, 1993 order

compelled the issuance of the record of decision no later than June 1, 1995.

On May 17, 1995, prior to the issuance of the record of decision by the United States Department of Energy, Idaho filed a paper styled as a "joint motion to reopen proceedings and for a status conference." Idaho requested that the court immediately schedule a status conference. Idaho alleged in its motion that the environmental impact statement did not comply with the order issued on June 28, 1993 by Judge Ryan. Idaho's motion also contained the following statement:

Additionally, there is apparently a divergence of opinion concerning the continuing force and effect of the Court's June 28, 1993, injunction after the record of decision has been signed. The Department of Energy apparently intends to begin shipping spent nuclear fuel to INEL after the record of decision is signed based upon its opinion that the June 28, 1993, injunction will not be effective after that event.

Judge Lodge issued an order on May 19, 1993, without waiting for the United States to reply to the motion for a status conference. Judge Lodge's *ex parte* order is styled as follows: "ORDER GRANTING JOINT MOTION TO REOPEN PROCEEDINGS: *EXTENDING INJUNCTIVE RELIEF:* AND REASSIGNING ACTION." (emphasis added). Judge Lodge addressed Idaho's reference to the question whether the injunction issued on June 23, 1993 would be extended beyond June 1, 1995 in the following words:

As to the concerns raised by Idaho regarding whether the injunction will remain in effect, the court finds good cause to continue this injunction until this matter is finally resolved. The court notes that continuation of the injunction has already been mandated by Judge Ryan in his Order Granting Motion for Summary Judgment, Injunction and Administratively Terminating Action, entered June 28, 1993. In that Order, Judge Ryan directed as follows:

IT IS FURTHER ORDERED that the Department of Energy should be, and is hereby, ENJOINED from any further transportation, receipt, processing, and

storage of spent nuclear fuel at the Idaho National Engineering Laboratory until the comprehensive environmental impact statement is completed, *reviewed,* and *any challenges to the statement are resolved.* Order Granting Motion for Summary Judgment, Injunction and Administratively Terminating Action, at 3 (filed June 28, 1993) (emphasis added).

Based on the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the Joint Motion to Reopen Proceedings and Request for Immediate Status Conference, filed by the Governor of the State of Idaho, Phillip E. Batt, and the State of Idaho on May 17, 1995, should be, and is hereby, GRANTED, and this matter is hereby REOPENED. A status conference will be scheduled on the next date available to the court.

*IT IS FURTHER ORDERED that the injunction imposed on June 28, 1993, shall REMAIN IN EFFECT until otherwise ordered by the court.* (emphasis added).

In his May 19, 1995 order, Judge Lodge made no reference to the stipulation that settled the dispute between the parties. The district court also did not consider the legal effect of the stipulated amendment to the June 28, 1993, order as reflected in the December 22, 1993, order which modified the termination date of the injunction. Judge Lodge did not discuss the import of the amended language that states that the injunction shall remain in effect "until DOE issues a record of decision based upon the environmental impact statement required by the Court's Opinion and Order of June 28, 1993."

The district court erred in relying solely on the termination clause of the June 28, 1993 order. The December 22, 1993 modification of the June 28, 1993 order explicitly changed the termination date of the injunction to the day the record of decision is filed.

On June 15, 1995, the United States filed a motion for reconsideration of the May 19, 1995 order "extending injunctive relief." On June 26, 1995, the United States filed an

appeal from the May 19, 1995 order. The next day, the district court denied the motion for reconsideration. The validity of that order is not before this court.

## V

The majority has concluded that "the 1993 injunction remained in force of its own effect, and that it was not modified or extended by the district court's [May 19, 1995] order." Majority opinion at page 235. While conceding that the language of the December 22, 1993 order "is superficially susceptible to the interpretation the government gives it," the majority has declined to give effect to the December 22, 1993 amendment to the June 28, 1993 order which changed the event that would terminate the life of the injunction. The June 28, 1993 injunction provided that it would be in effect until any disputes concerning the adequacy of the environmental impact statement had been resolved by the court. In exchange for the agreement of the United States to give up its right to file an appeal, Idaho agreed that the June 28, 1993 injunction would expire upon the filing by the United States of the record of decision.

Contrary to the majority's conclusion, the district court's May 19, 1995 order was not a mere interpretation of the June 28, 1993 order. The termination language of the June 28, 1993 order was no longer part of the injunction, following the December 22, 1993 amendment. The district court did not purport to interpret or clarify the termination language substituted by the parties in the December 22, 1993 amended injunction. Instead, the district court purported to modify the December 22, 1993 order by again imposing the termination language contained in the June 28, 1993 order on the United States. This modification was contrary to the stipulation of the parties and the clear language of the December 22, 1993 order. As we noted in our prior decision in this matter, a district court lacks the authority to modify a decree entered pursuant to the stipulation of the parties. See Jeff D. v. Andrus, 899 F.2d 753, 758 (9th Cir.1989) ("courts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties.").

Having accepted the parties' stipulated amendment to the termination clause contained in the June 28, 1993 agreement, the district court was required to respond to Idaho's question concerning the continuing force of the June 28, 1993 injunction by explaining that it expired by its own terms on June 1, 1995. Because the court's May 19, 1995 order is not supported by any showing or findings that Idaho's challenge to the environmental impact statement would succeed, or that there are serious questions about its validity, the district court abused its discretion in modifying the December 22, 1993 amended injunction. See Beno v. Shalala, 30 F.3d 1057, 1063 (9th Cir.1994) ("we review for abuse of discretion a district court order granting or denying a preliminary injunction.").

I would hold that since the district court purported to modify the June 1, 1995 termination date set forth in the December 22, 1993, order, we have jurisdiction over the May 19, 1995 interlocutory order pursuant to section 1292(a)(1). I would reverse the modified injunction issued by the district court because it is not supported by any showing of irreparable injury or that the environmental impact statement violates the National Environmental Policy Act.